# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 8711 | DATE | 8/13/2004 |
| CASE TITLE | DENNIS RIORDAN vs. J.C. WHITNEY CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant's motion for summary judgment [33-1] is granted. Judgment is entered for defendant J.C. Whitney Co. and against plaintiff Dennis Riordan. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 17 2004 | |
| | Notified counsel by telephone. | | date docketed | 53 |
| | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/13/2004 | |
| CB courtroom deputy's initials | | 2004 AUG 16 PM 3:57 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | date mailed notice PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| DENNIS RIORDAN, | ) | | **DOCKETED** |
| Plaintiff, | ) | No. 03 c 8711 | **AUG 1 7 2004** |
| v. | ) | Suzanne B. Conlon, Judge | |
| J.C. WHITNEY CO., | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

Dennis Riordan sues J.C. Whitney Co. for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Riordan claims he opposed unlawful discrimination and was terminated by Whitney in retaliation for his protected conduct. Whitney denies that it engaged in retaliation and states that Riordan was terminated as part of a financially necessary reduction in force. Whitney moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Riordan has failed to comply with Local Rule 56.1(b)(3); he did not respond to Whitney's Rule 56.1(a)(3) statement of undisputed material facts. Whitney's undisputed facts are therefore deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); L.R.

---

[1] On February 26, 2004, the court dismissed Riordan's claims of harassment and age discrimination because they were not properly raised in his EEOC charge.

1



56.1(b)(3)(B). This admission severely penalizes Riordan, for the court must depart from its usual posture of construing all facts in his favor. *Waffer v. Indian Creek Ranch Club, Inc.*, No. 99C6413, 2000 U.S. Dist. LEXIS 9008, at *3 (N.D. Ill. June 20, 2000), *quoting, Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994). The court will not consider any facts contradicting Whitney's Rule 56.1 statement. *Smith v. Severn*, 129 F.3d 419, 425-26 (7th Cir. 1997). Summary judgment will only be granted, however, if Whitney demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 782 (7th Cir. 2004).

## II. Facts

All facts are undisputed unless otherwise noted. Whitney is a direct marketer of automobile parts and accessories. On October 23, 1995, Whitney hired Riordan as its inventory control manager.

In the Fall of 2000, Riordan had lunch with Carol Warshawsky, chair of Whitney's board of directors. According to Riordan, Warshawsky wished to discuss: (1) employees' understanding of company objectives; and (2) morale and cultural differences between Whitney's LaSalle and Chicago facilities. Warshawsky has no recollection of discussing these topics with Riordan.

In response to issues raised at the lunch meeting, on October 18, 2000, Riordan sent Warshawsky an e-mail regarding communication of corporate objectives. Riordan sent Warshawsky a second e-mail on November 3, 2000, which noted "the remarkable attrition that has occurred of recent." Def. Mem. Ex. I. The November 3, 2000 e-mail attached three documents. The first document detailed Riordan's perception of Whitney's strengths and weaknesses and included a statement that "the management team is not diverse - relatively few women and minority managers,

fewer women and minority directors, no non-owner executive team members who are women or minorities." Def. Mem. Ex. I. Riordan did not know the number of women or minorities who held managerial titles when he prepared this list. The second document listed "Key Departures in the Last 24 Months - Chicago Only." Def. Mem. Ex. I. The list included the names and job titles of several former employees who either voluntarily quit or were terminated, but did not identify the races or sexes of the individuals. According to Whitney, of the twenty-eight individuals listed, eleven were women and one was non-caucasian. The final document listed "CARS Original Core Team Members of 10/97," including the names of team members and their employment status. Def. Mem. Ex. I. Riordan asserts these e-mails provided Warshawsky with concrete examples of minorities and women who quit or were terminated from the Chicago facility.

In 2001, Whitney adjusted its business processes in order to generate sales, increase productivity and reduce costs. Economic considerations led to a series of layoffs and position eliminations. In January and February 2001, six people were terminated. Riordan was not terminated at this time. Indeed, Riordan was promoted in January 2001 to director of merchandise support and his salary increased from $85,000 to $88,000. In April 2001, seven employees were terminated. Riordan was not terminated as part of this April reduction, although three employees from his department were terminated and at least one departmental position was eliminated. As a result, Riordan assumed additional job responsibilities and his salary was increased from $88,000 to $91,000. Ten more employees were terminated between May and August 2001. On October 11, 2001, Tim Ford, Whitney's president and CEO, issued a memorandum to all employees outlining Whitney's financial woes in light of the 9-11 terrorist attacks and its intended cost-cutting measures, including further layoffs.

In Riordan's department, Eugene Geiger, vice-president of merchandising and Riordan's supervisor, reduced spending and consolidated three director level positions into two. Geiger assessed the three directors and determined Riordan's duties could be assumed by the other two directors. Geiger recommended, and Ford approved, elimination of Riordan's position. Consequently, Riordan was one of twenty employees terminated on October 11, 2001.

Neither Ford nor Geiger knew of Riordan's e-mails to Warshawsky when the decision was made to terminate Riordan. Although Warshawsky received Riordan's two e-mails, she did not discuss or forward them to others. As chair of the board of directors, Warshawsky had no direct role in the formulation of departmental plans for cost-cutting or the decisions regarding job consolidation or elimination.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. Retaliation

Title VII prohibits employers from retaliating against employees who oppose unlawful employment practices covered by Title VII. 42 U.S.C. § 2000e-3(a). Riordan may prove his retaliation claim either directly or indirectly. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004). To survive summary judgment using the direct method, Riordan must present direct evidence that: (1) he engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there was a causal connection between the two. *Id.; Stone v. City of Indianapolis Public Utils. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002).

Alternatively, Riordan may prove his claim indirectly by demonstrating: (1) he engaged in statutorily protected activity; (2) he performed his job according to Whitney's legitimate expectations; (3) despite his satisfactory performance he suffered an adverse action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Davis*, 368 F.3d at 788. If Riordan establishes these elements, Whitney must present a legitimate, nonividious reason for the adverse action. If such a reason is presented, the burden shifts back to Riordan to show the proffered reason is pretextual. *Id.* The burden of persuasion remains at all times with Riordan. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). Riordan fails to present evidence sufficient to meet his burden under either method.

### A. Direct Method

Riordan has not proffered any direct evidence of retaliation. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) ("direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus."). Riordan has not asserted, nor is there any evidence to suggest, that Whitney has somehow admitted Riordan's termination was

retaliatory. Riordan also fails to provide circumstantial evidence that directly points to a retaliatory intent. *Davis*, 368 F.3d at 786.

Further, Riordan has not established statutorily protected activity. Riordan's e-mails to Warshawsky listed the employment status of employees by name and title. Neither e-mail mentioned any individual's sex or race, nor the circumstances surrounding terminations or resignations. The e-mails did not suggest that attrition or lack of diversity in upper management was the result of inappropriate or unlawful conduct. Statutorily protected expression must at least suggest to the employer (if not state outright) that the employee reasonably believes the employer is violating Title VII. *Gleason v. Mesirow Fin.*, 118 F.3d 1134, 1147 (7th Cir. 1997) (no protected conduct where general complaints about management style did not make employee's concerns of sex discrimination known to employer); *Salamanca v. Robert Half Corp.*, No. 02C5033, 2003 U.S. Dist. LEXIS 5602, at *24 (N.D. Ill. Apr. 4, 2003) (no protected conduct where employee's complaints of unfair treatment did not suggest that the different treatment was on account of her race or national origin); *Driver v. Arbor Mgmt, Inc.*, No. 00C3933, 2001 U.S. Dist. LEXIS 24374, at *3-4 (N.D. Ill. Oct. 4, 2001) (no protected conduct where employee did not complain to employer about race discrimination).

Finally, even if his e-mails constituted protected activity, Riordan has not established any causal connection between his alleged opposition to discrimination in October and November 2000 and his termination in October 2001. The mere fact that Riordan's alleged protected conduct occurred prior to his termination does not prove that he was terminated because of protected conduct. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). The eleven or twelve month span between Riordan's alleged protected conduct and his termination is too long to support a

reasonable inference that the termination was causally connected to his protected conduct. *See e.g., Haywood v. Lucent Techs. Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). And, critically, Riordan has produced no evidence to support a reasonable inference that the person who decided to terminate his employment, Geiger, had any knowledge of Riordan's alleged protected conduct. "Absent such knowledge, [Riordan] lacks a causal link between the termination and the complaint of discrimination." *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000). Geiger has testified he had no knowledge of Riordan's e-mails to Warshawsky when he selected Riordan for termination. Def. Mem. Ex. Q at 53-54. Ford testified and attested he had no knowledge of Riordan's e-mails to Warshawsky when he approved Geiger's selection. Def. Mem. Ex. N at 35; Ex. O, ¶ 11. Warshawsky testified and attested she never discussed or forwarded Riordan's e-mails to anyone, nor did she have any involvement in Riordan's termination. Def. Mem. Ex R at 11; Ex. W, ¶¶ 2-4. All foregoing testimony is uncontroverted.

### B. Indirect Method

For the reasons previously discussed, Riordan has not established he engaged in protected conduct. Further, he has not demonstrated he received less favorable treatment than similarly situated employees who did not engage in statutorily protected activity. Riordan generally asserts he was selected over two directors who did not oppose discrimination, but fails to support his assertion with any evidence. "Where a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason, a plaintiff must show that he is similarly situated with respect to performance, qualifications and conduct." *See Snipes v. Illinois Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002).

## C. Legitimate Reason for Termination

Even if Riordan could establish a *prima facie* case of retaliation, he has not established the pretext necessary to survive summary judgment. Whitney's burden to produce a legitimate, non-discriminatory reason for Riordan's termination is "quite light" and "the mere articulation of the reason . . . puts the onus back on [Riordan] to prove pretext." *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999). Riordan may establish pretext directly, by showing Whitney's decision to terminate was more likely than not motivated by retaliatory reasons, or indirectly, by showing: (1) Whitney's explanation has no basis in fact; or (2) the explanation was not the real reason; or (3) the reason stated was insufficient to warrant the termination. *Shackelford v. Roadway Express, Inc.*, No. 02C1167, 2003 U.S. Dist. LEXIS 108, *22 (N.D. Ill. Jan. 2, 2003), *aff'd*, Nos. 03-1666 & 03-1667, 2004 U.S. App. LEXIS 7647 (7th Cir. Apr. 19, 2004).

Whitney proffers evidence that Riordan's termination was part of a financially necessary reduction in force. Geiger decided to eliminate one of three director level positions and specifically selected Riordan for termination after assessing the department's needs and comparing Riordan's skills with those of the two other directors. On October 11, 2001, Whitney terminated nineteen employees in addition to Riordan. Whitney has produced significant uncontested documentary and testimonial evidence to support its reason for termination.

Nevertheless, Riordan asserts Whitney's proffered reason is unworthy of credence because its reasons have been inconsistent. Riordan argues that at the time of his termination and during the EEOC investigation, Whitney's sole proffered reason for termination was the 9-11 attack, whereas Whitney now argues that reductions were necessary because of "economic

8

difficulties" and "business strategy." The consistency of an explanation may be evidence of its veracity. *See Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999). However, Whitney's explanations are not inherently contradictory or inconsistent. Moreover, by asserting that the proffered reason is pretextual, Riordan infers that Whitney terminated nineteen other employees on October 11, 2001 to cover its retaliatory motive with regard to him. This implication is speculative and unsupported. *Davis*, 368 F.3d at 785. Riordan also ignores evidence that demonstrates he was given a promotion, additional responsibilities, and two raises after his alleged opposition to discrimination and while other employees were being terminated. Riordan has not met his burden of showing pretext.

## CONCLUSION

The material facts are undisputed. For the foregoing reasons, J.C. Whitney Co. is entitled to judgment as a matter of law.

August 13, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge